IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERIKA OSWALD** | : | **CIVIL ACTION NO:** |
| **Plaintiff** | : | |
| **v.** | : | |
| **WILKES BARRE AREA SCHOOL** | : | |
| **DISTRICT, AND BRIAN COSTELLO** | : | |
| **AND FRANK CASTANO IN THEIR** | : | |
| **OFFICIAL AND INDIVIDUAL** | : | |
| **CAPACITY** | : | |
| **Defendants** | : | **JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

### I.   PRELIMINARY STATEMENT

1. This is an action for an award of damages, attorneys' fees, and other relief on behalf of the Plaintiff, Erika Oswald, (Oswald) a former police officer of the Wilkes Barre Area School District, who has been harmed by the Defendant's unlawful conduct in violation of the 14th Amendment as set forth herein.

2. This action is brought pursuant to Title 42 U.S.C. 1983.

### II.   JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked, and venue is proper in this district pursuant to 28 U.S.C. §1331 and §1391 as Plaintiff Oswald's claims are substantially based on 42 U.S.C. 1983 and a substantial part of the events or omissions giving rise to the claim occurred within this District.

### III.   PARTIES

4. Plaintiff, Erika Oswald, is an adult individual, and former police officer employed by

the Wilkes Barre Area School District, and citizen of the Commonwealth of Pennsylvania, residing in Kingston Borough, PA.

5.   Defendant, Wilkes Barre Area School District, (District) upon information and belief is a Municipal corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania, maintaining a regular place of business located at 730 South Main Street, Wilkes Barre, Pennsylvania, 18711 and operates through a Board of Education with final policy making authority.

6.   Defendant, Brian Costello, is an adult individual and the Wilkes Barre Area School District Superintendent, a high-level member of management and policymaker of the District. Superintendent Costello is sued both in his official and individual capacity.

7.   Defendant, Frank Castano, is an adult individual and the Director of Human Resources of the Wilkes Barre Area School District, a high-level member of management and policymaker of the District. Mr. Castano is sued both in his official and individual capacity.

8.   At all relevant times hereto, Defendant, Wilkes Barre Area School District was acting through its board of education, agents, servants, and employees, who were acting within the scope of their authority, course of employment, and under the direct control of the District.

IV.   **STATEMENT OF FACTS**

9.   Plaintiff Oswald, was employed as a police officer by the Defendant since, on or about January 6, 2023 until she was terminated in the summer 2023 without required procedural due process.

10. Oswald was employed locally as a police officer since 1994 and is a retiree of the Wilkes Barre City Police Department.

11. Oswald holds a Bachelor's Degree in Criminal Justice/Sociology and completed the

Lackawanna College Police Academy, including yearly updates. She is a firearms instructor and accident reconstructionist. She has completed specialized training in drug enforcement, DUI field sobriety testing and is a certified breath test operator.

12. Oswald successfully completed Act 67 School Police Officer Training to begin her duties at the District.

13. On or about May 18, 2023, Oswald was an employee of the District assigned to the Solomon Elementary and Middle School Complex as a police officer.

14. At approximately 1:25 PM on May 18, 2023, Oswald was sent to Room 200 by Middle School Principal Khalife for a report of a disruptive student that was threatening a teacher.

15. Khalife sent Oswald to this disturbance call alone, and without a District administrator, in violation of District policy.

16. Khalife advised Oswald that he would come up to the room once he was done with a student issue in his office.

17. Based upon information and belief, Khalife knew the identity of the student that was the subject of the disturbance call and knew of his aggressive tendencies.

18. Oswald was not aware of the student's identity.

19. Based upon information and belief, the student had dozens of disciplinary referrals for, but not limited to, threatening teachers and students and being combative.

20. The student is estimated to weigh approximately 350 pounds.

21. Oswald proceeded to the room and was met by the classroom teacher who requested Khalife's presence. The teacher advised Oswald that the disruptive student was in the rear of the classroom.

3

22. Oswald asked the student to step out of the classroom, which he refused to do.

23. Students in the classroom began hollering to the student that he was in trouble.

24. The student told Oswald that she can not touch him, threatened her, and began calling her names.

25. Oswald, a veteran police officer with nearly 3 decades of experience, attempted to calm the student advising him they were just going to talk to "Mr. K," referring to Khalife.

26. Oswald advised the student not to make more of this than it was, they were going to talk, and get him home.

27. The student continued to demean Oswald and threatened to "snap" her in half and became more agitated with students in the classroom egging him on. There were approximately 25 students present.

28. Oswald requested that Khalife respond to the classroom because the student was becoming more agitated, hostile, and threatening.

29. When the student heard Oswald requesting assistance from Khalife, he stood up, threw his backpack towards the front of the room, and charged at Officer Oswald.

30. Oswald was pushed up against a shelf and the student began to strangle her.

31. Oswald attempted to escape the strangulation and was becoming lightheaded, nearly losing consciousness due to the attack.

32. After several minutes of being strangled, a male student came to her aid with Khalife entering the room at approximately the same time.

33. Oswald and the student fell to the floor. Oswald was injured and directed that the student be placed on his side. She wanted him to remain on the floor and announced that he was under arrest.

34. Oswald placed a radio call for emergency assistance from the Plains Township Police Department.

35. Officers from the Plains Township Police Department arrived within minutes of Oswald's call and placed the student in custody.

36. A Petition was later filed in Luzerne County Juvenile Court charging the student with strangulation, aggravated assault, simple assault, disorderly conduct and harassment.

37. Oswald and Officer Brett Smith served as the petition's affiants.

38. After the incident, the student was released to the custody of his mother.

39. Oswald was transported by ambulance to the Geisinger Emergency Room as a level 2 trauma patient to be treated for her injuries, including a neck sprain and bruised ribs.

40. Later in the evening, after discharge from the hospital, Khalife attempted to contact Oswald in-person at her home and by telephone. Oswald was not able to speak to him due to her injuries.

41. Oswald was not able to work on May 19, 2023 due to her injuries.

42. Oswald was advised that if she did not report to work on May 22, 2023 she would need to use her own paid time off. However, Oswald reported for duty, completed an injury report, and the juvenile petition.

43. On or about May 22, 2023, District Police Chief Gembitski sent an email to all police officers reminding them of the District Policy requiring an administrator to respond with police for student disciplinary problems.

44. On or about May 31, 2023, Oswald was advised by Chief Gembitski that the "powers that be" wanted her to take a de-escalation course and provided a link in an email for her to access the course.

5

45. As directed by the Chief, Oswald did not work on June 1, 2023 and was advised not to report for duty for the remainder of the school year.

46. Oswald completed the course, at her own expense, on June 4, 2023. She asked the Chief why she needed the course. She was advised it was a mandate from District Administration.

47. On June 6, 2023, Frank Castano, Human Resources Director, advised Oswald that she was being subjected to a Loudermill hearing for "inappropriate use of de-escalation techniques, which included inappropriate language." The notice did not contain a detailed statement of charges.

48. Dr. Brian Costello conducted the Loudermill hearing in which a brief audio clip of the incident was played. Oswald explained that the audio did not capture the full incident. Costello generally complimented her work to date, including her involvement at expulsion hearings, in the presence of the Chief and human resources representatives.

49. At the conclusion of the Loudermill hearing, Costello advised Oswald that due to the audio clip, he had to suspend her for 2 days. Based upon information and belief, Costello was concerned about Oswald's use of the word "cuz" when referring to the student. Oswald used that reference because the student was calling her "cuz." Oswald accepted the suspension. She had already completed the mandated training. The end of the school year was near.

50. Chief Gembitski asked for her weapon, keys, and identificaiton. Oswald went home to retrieve the items. She returned, gave them to the Chief, who then provided a receipt.

51. Costello advised Oswald that he would need to notify the School Board of the incident and the 2-day suspension.

52. On or about June 8, 2023, Oswald received a group email from the Chief sent to

all District police officers expressing his wishes that they enjoy the summer and to plan on returning to duty on September 5, 2023. In response to this email, Oswald inquired about summer training opportunities.

53. On or about June 11, 2023 Chief Gembitski and Mr. Costano advised her that the Board of Education heard the brief audio clip and voted to fire her if she did not resign. She had not been provided with any notice of this pending action, nor the opportunity to be heard, prior to the Board of Education's decision.

54. Oswald asked Costello for the opportunity to appear before the Board but he refused, indicating that it was not necessary.

55. Oswald was never provided with a notice of a hearing, the opportunity to be heard, or a hearing before the school board despite her request.

56. On September 1, 2023, Oswald emailed Castano to advise him that she is ready to report for duty during the new school year.

57. In response to Oswald's email, Castano advised her that she was terminated over the summer by the school board.

58. Oswald never received any written or oral notice of her termination, only learning of the termination by Castano's September 1, 2023 email.

59. Plaintiff has a property interest in her employment pursuant to, i.e., 24 Pa.C.S. §13-1310-c and §5-514.

60. Punitive damages are warranted against the individual Defendants because the conduct was intentional, willing, and done with reckless indifference to Plaintiff's rights.

61. As a direct result of the unlawful conduct engaged in by Defendants in violation of

the procedural due process rights afforded by the 14th Amendment of the United States

Constitution, the Plaintiff has sustained loss of earnings, severe emotional, physical, and

psychological distress, loss of self-esteem, loss of future earning power, humiliation, insult, and

seeks front pay, back pay, and interest due thereon.

## COUNT I

## 42 U.S.C. 1983 - Violation of 14th Amendment – Procedural Due Process

### Plaintiff v. Defendant Costello and Castano

62. Plaintiff incorporates the preceding paragraphs by reference as though fully set forth

at length herein.

63. Defendants, acting under color of State law, subjected, or caused to be subjected, any

citizen of the United States or other person within the jurisdiction thereof, herein the Plaintiff, to

be deprived of any rights, privileges, or immunities secured by the Constitution and in violation

of the 14th Amendment.

64. Plaintiff has a property interest in her employment with the District.

65. Defendants Costello and Castano failed to provide Plaintiff with proper, adequate

Notice, a detailed statement of charges, and denied Plaintiff the opportunity to be heard before

the Board of Education. Defendant Costello denied Plaintiff's request to address the Board of

Education.

66. Plaintiff was terminated by the District, without notice, an opportunity to be heard, or

a hearing when she had already been suspended for 2 days and required to undergo mandatory

training as imposed at her Loudermill hearing.

67. As detailed in this Complaint, Defendant District, Castano, and Costello exercised, or

maintained the right to exercise, the requisite level of control over the operations of the school

and police department and accordingly is liable to the Plaintiff for the acts of its agents, servants,

and employees, who were acting within the scope of their authority, course of employment, and under the direct control of the Defendant Wilkes Barre Area School District.

68. The Defendant District has a duty to adequately train and supervise its agents, servants or employees regarding fundamentally fair disciplinary proceedings and hearings, that provide the required procedural due process, including providing adequate notice and the opportunity to be heard.

69. The Defendants did not even advise the Plaintiff of her termination until she inquired about returning to duty at the start of a new school year.

70. The Defendants failed to provide the Plaintiff with an opportunity to confront her accusers and relied upon an audio tape depicting only minutes of the strangulation incident.

71. The Defendants knew or should have known that failing to adequately train and supervise their agents, servants, or employees could result in unlawful violation of the Plaintiff's rights.

72. As a direct result of the negligence, carelessness, deliberate and reckless indifference of the Wilkes Barre Area School District and Defendants acting in their official capacity, Plaintiff has suffered, and continues to suffer from, emotional distress, humiliation, embarrassment, anguish, personal hardship, economic loss, social disruption, and psychological, physical, and emotional harm.

73. Plaintiff's losses and damages were, and caused by the intentional and knowing conduct, deliberate indifference, and recklessness of the individual capacity Defendants.

### COUNT II

### 42 U.S.C. 1983 - Violation of 14th Amendment – Procedural Due Process (Monell Liability)

### Plaintiff v. Wilkes Barre Area School District

74. Plaintiff incorporates the preceding paragraphs by reference as though fully set forth

at length herein.

75. Defendant Wilkes Barre Area School District, acting under color of State law, subjected, or caused to be subjected, any citizen of the United States or other person within the jurisdiction thereof, herein the Plaintiff, to be deprived of any rights, privileges, or immunities secured by the Constitution and in violation of the 14th Amendment.

76. The District, through their Board of Education, voted to fire Plaintiff without providing her with notice, nor the opportunity to be heard, before terminating her employment in violation of Plaintiff's procedural due process rights.

77. The Wilkes Barre Area School District Board of Education terminated Plaintiff's employment after she had already been suspended and required to undergo remedial training that had been imposed by the Superintendent.

78. The Wilkes Barre Area School District Board of Education and Superintendent are high-level policy makers with final policy-making and decision-making authority.

79. As the highest policymakers for the Wilkes Barre Area School District, the Board of Education and Superintendent Costello's actions constituted the District's policy for personnel investigation, disciplinary, and termination proceedings.

80. As detailed in this Complaint, Defendant District exercised, or maintained the right to exercise, the requisite level of control over the operations of the Superintendent, school, and police department and accordingly is liable to the Plaintiff for the acts of its agents, servants, and employees, who were acting within the scope of their authority, course of employment, and under the direct control of the Defendant Wilkes Barre Area School District.

81. The Defendant District and Costello have a duty to adequately train and supervise its

agents, servants or employees regarding fundamentally fair disciplinary hearings, including providing adequate notice, the opportunity to be heard, and providing procedural due process during disciplinary matters.

82. The Defendant District failed to provide the Plaintiff with an opportunity to confront her accusers and relied upon an audio tape depicting only minutes of the strangulation incident.

83. The Defendant District and Costello knew or should have known that failing to adequately train and supervise their agents, servants, or employees could result in unlawful violation of the Plaintiff's rights.

84. The Defendant District failed to adopt, implement, and follow policies necessary to prevent violations of the Constitutional rights of their police officers during disciplinary or termination proceedings by failing to provide procedural due process including notice and the opportunity to be heard.

85. The Plaintiff was not even advised of her termination until she inquired about returning to duty at the start of a new school year.

86. Based upon information and belief, and consistent with the conduct of the District, Costello and Castano, the District had policies, practices and/or customs related to: (1) not providing adequate notice to Plaintiff to fully advise of the charges her; (2) depriving Plaintiff of the opportunity to be heard before the Board of Education despite her request to do so; (3) subjecting the Plaintiff to being disciplined for the same offense twice; (4) failing to provide fundamentally fair proceedings; (5) failing to provide de-escalation training to Plaintiff upon her hiring, yet later disciplining her for alleged improper use of de-escalation, and (6) relying upon what is believed to be a few minutes of audio to terminate the Plaintiff without notice, nor the opportunity to be heard.

87. As a direct result of the negligence, carelessness, recklessness, and deliberate indifference of the Wilkes Barre Area School District and Defendants acting in their official capacity, Plaintiff has suffered, and continues to suffer from, emotional distress, humiliation, embarrassment, anguish, personal hardship, economic loss, social disruption, and psychological, physical and emotional harm.

88. Plaintiff's losses and damages were, and caused by, the intentional and knowing conduct, deliberate indifference, and recklessness of the Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that a judgment be entered in her favor and against Defendants and order:

a.   Defendants to pay Plaintiff compensatory damages on all counts herein;

b.   Punitive damages from individual capacity Defendants Costello and Castano;

c.   Defendants to pay attorneys' fees and expenses pursuant to 42 U.S.C. §1988, costs of suit, interest, and expert witness fees as allowed;

d.   Defendant District to compensate Plaintiff with a rate of pay and other benefits of employment to which she would have been entitled, including lost earnings, earning capacity and benefits, past and future, had she not been subjected to unlawful violation of her Constitutional rights;

e.   Defendant District to compensate Plaintiff with an award of front and back pay plus interest;

f.   Defendants to compensate Plaintiff for compensatory damages for future pecuniary

losses, mental anguish, personal hardship, social disruption, loss of enjoyment of life,

humiliation, embarrassment, and other non-pecuniary loss as allowable;

    g.   All other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted,

Robert J. Boyer, Esquire / Id. No. 327782
126 South Main Street
Pittston, PA 18644
570-407-2703 (phone)
570-654-6509 (fax)
BoyerLaw@comcast.net